(165 App. Div. 573)

### LAMOUTTE v. TITLE GUARANTY & SURETY CO.   (No. 356–89.)

(Supreme Court, Appellate Division, Third Department.   January 6, 1915.)

1. PRINCIPAL AND SURETY (§ 81*)—LIABILITY OF SURETY—CONDITIONS OF LIABILITY.
    A separation agreement provided that the husband and wife should each have exclusive care of the children during certain stated periods, and that neither should take them from the state for more than one week. Each gave a bond for the performance of the conditions of the contract, which provided that no waiver of any rights under the contract should operate thereafter to impeach any rights of the parties under the undertaking.  The wife did not deliver the children' to the husband until some time after the date fixed, and thereupon a new agreement was made, whereby the husband waived the breach of the contract and allowed the wife to retain the custody of the children until he made demand for them. The wife's surety had no notice of the subsequent agreement.  During the time that the children would have been in the husband's custody under the original agreement the wife took them abroad for a period of 15 weeks, and the husband brought this action on her bond to recover the amount thereof as liquidated damages for the breach of the contract. *Held* that, by the terms of the bond, the surety did not guarantee per-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

formance of that condition by the wife while the children were to be in the husband's custody, and therefore it was not liable.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 126; Dec. Dig. § 81.*]

2. PRINCIPAL AND SURETY (§ 66*)—LIABILITY OF SURETIES—WAIVER.

The husband could not, after executing the waiver, recover from the surety for breach of the contract to return the children to him until the stipulated time, since a right which has once been waived cannot afterwards be asserted.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 108–110, 112; Dec. Dig. § 66.*]

3. PRINCIPAL AND SURETY (§ 66*)—LIABILITY OF SURETIES—WAIVER—"THERE-AFTER—"AFTERWARD."

The waiver clause in the bond did not render the surety company liable for such breach by the wife, since it did not authorize the husband to en-large the obligation of the wife's surety by waiving the provisions of the contract, but only provided that such waiver would not affect the surety's liability for subsequent breaches during the time the wife had custody of the children; the word "thereafter" being synonymous with "afterward," and meaning subsequent in point of time.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 108–110, 112; Dec. Dig. § 66.*

For other definitions, see Words and Phrases, First and Second Series, Thereafter.]

Appeal from Trial Term, Broome County.

Action by Alexander C. Lamoutte against the Title Guaranty & Surety Company. Judgment for the defendant, and plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOW-ARD, and WOODWARD, JJ.

Wilcox & Brodek, of New York City (Charles A. Brodek, of counsel), for appellant.

Alexander & Keenan, of New York City (Harvey D. Hinman, of Binghamton, and S. J. McTague, of New York City, of counsel), for respondent.

WOODWARD, J. The plaintiff in this action was the defendant in an action brought by his former wife for a decree of separation, and the judgment in that action was entered in the office of the clerk of the Supreme Court of New York County on the 24th day of March, 1908. The judgment gave the custody of the two children of the marriage to the plaintiff. Subsequently, and on or about the 8th day of July, 1911, the parties to that action entered into two contracts in writing, known as "Contract A" and "Contract B," by the terms of which each of the parties was given control of the children of the mar-riage at stated times and under certain restrictions, and on the 9th day of August, 1911, the original decree was amended, so as to embody the provisions of these two contracts. Under the terms of the contracts both the parties were required to give bonds for the faithful perfor-mance of the conditions of these contracts in the sum of $5,000. The defendant in the present action became the surety upon the bond of Leora B. Lamoutte (plaintiff's former wife, now known as Jane

Francke), and this action is brought to recover the sum of $5,000, as liquidated damages, for an alleged breach of the contract on the part of the principal in the said bond. Upon the trial of the action there was no dispute as to the material facts in the case, and the learned court found the facts and reached the conclusions of law upon which a judgment has been entered dismissing the complaint upon the merits. The plaintiff appeals from the judgment.

[1] The breach of the contract relied upon by the plaintiff is the conceded fact that in the summer of 1912 Jane Francke took the two children of the marriage upon a trip to Europe, being absent from the state of New York about 15 weeks; one of the provisions of the contract being that it "is expressly understood and agreed that neither of the children shall be taken from the state of New York for a period longer than one week, unless the health of the child requires it and the necessity therefor is certified by two physicians, one selected by the first party and one by the second party, and due notice of such intention is given or caused to be given by the party in whose custody said child or children shall then be." None of these conditions were complied with, and the plaintiff proceeds upon the theory that, this particular provision being specifically guaranteed by the bond, he is entitled to recover the full amount which was stipulated to constitute liquidated damages. Without going into the question whether this is a case where the court would aid in the collection of a specific sum of money as liquidated damages, where no actual damages were shown, we will proceed to the discussion of the law as it relates to the particular facts of this case, for we are persuaded that it is unnecessary to determine any incidental question upon this appeal.

The bond in question recites the making of the two contracts, A and B, and that in said contract B the second paragraph refers to contract A as an agreement "providing for the custody of the children Ada and Louis," and that in said contract the said parties agreed, among other things, as follows:

"Seventh. If the second party appears in the action now pending, * * * and if the first party obtains in said suit now pending in Ada county, Idaho, an absolute decree of divorce from said second party, the first party hereby covenants and agrees to deliver, at Binghamton, New York, into the care and custody of the said second party, the two children, Ada and Louis, within fifteen days after the granting of said decree, to be held by said second party pursuant to the terms of the agreement entered into between the parties regarding the custody of the said children. It is expressly understood and agreed that neither of the children shall be taken from the state of New York for a period longer than one week, unless the health of the child requires it, and the necessity therefor is certified by two physicians, one selected by the first party and one by the second party, and due notice of such intention is given or caused to be given by the party in whose custody said child or children shall then be. * * * If delivery of the children shall be made pursuant to this agreement, the second party shall have the children with him Christmas Day, 1911."

The bond then recites that copies of these agreements have been filed with the corporation, and that:

"Whereas, the said obligee enters into the said contract A and said contract B upon said principal's agreement and stipulation therein and thereby and herein and hereby evidenced faithfully to carry out and perform all of

the conditions on the part of said principal of said contract A (with the exceptions hereinafter noted) and paragraph 'Seventh' of contract B, and upon the execution and delivery of this undertaking to said obligee, to pay said obligee the sum of five thousand dollars ($5,000) for liquidated damages to said obligee by reason of the nonperformance by said principal of any of the conditions of contract A (with the exceptions hereinafter noted), or of paragraph 'Seventh' of contract B [hereinbefore quoted in full] on the part of said principal to be performed: Now, therefore, the condition of this obligation is such that if the said principal shall duly and faithfully perform," etc.

The bond further provided that it was issued upon the express condition that upon proper proof of a default in the performance of the obligations the defendant would pay the obligee "the full amount of this undertaking" as "liquidated damages," etc., and that the defendant should be subrogated to the rights of the obligee under the contracts, and with a proviso that if the obligee defaulted in any of his covenants the bond should be void. The exceptions in contract A were stipulated to be the matters in reference to the payment of the salary of the governess, the expense of providing for the education of the children, and the board and lodging of the governess in charge of the children, and it was agreed that as to these matters the bond should not be operative. Then follows the clause, much relied upon by the plaintiff, that:

"No waiver by said principal or obligee of any of his or her rights under any of the provisions of contract A or of paragraph 'Seventh' of contract B, or of this undertaking, shall operate, directly or indirectly, thereafter to impair any of the rights of either of said parties under this undertaking, the intention hereof being that such undertaking shall, after such waiver, continue with the same force and effect as if such waiver had not been made."

All of the contracts and obligations were duly delivered, and the divorce action proceeded to final decree, and the children were duly delivered to the plaintiff in this action. It is stipulated that on or about the 11th day of June, 1912, Jane Francke delivered the children to the plaintiff at Binghamton, N. Y., in accordance with the terms of contract A, although it is not disputed that upon a strict reading of contract A the children should have been delivered to the plaintiff on the 28th day of May of that year, this being the beginning of one of the alternating periods provided for in the contract. On the occasion of the delivery of the children to the plaintiff on the 11th day of June, 1912, the latter, under the terms of the agreement, was entitled to have possession of them for a period of six months, during which time he was under obligations to furnish the governess with board and lodging as part of his agreement. But at that time the plaintiff entered into a new contract with Jane Francke, by the terms of which he acknowledged having received the children from her, and at her request the plaintiff "agrees to their return to their mother in the city of New York," and Jane Francke, on her part "agrees to deliver the said children to Alexander C. Lamoutte at the city of Binghamton, N. Y., at any time within the six months immediately following the 28th day of May, 1912, upon one week's written notice to either the said Jane Francke or Alexander & Keenan," and it was mutually "understood and agreed that the parties hereto shall thereafter make deliveries in

accordance with the terms of the original agreement." It was further "mutually agreed that neither party to this agreement waives any rights secured by the former agreements between them, except as herein specified," and that "neither party shall proceed for forfeiture of the bond heretofore entered into for any breach of said agreements that may have occurred up to the present time."

The defendant in this action had no notice of this delay in the delivery of the children to the 11th day of June, 1912, and the making of the above agreement, which concededly had the effect of waiving the default on the part of Jane Francke, and it is important to consider the relation which the defendant bore to the plaintiff during the six months following the 28th day of May, 1912. It is the theory of the plaintiff that this agreement of June 11, 1912, was a waiver within the contemplation of the provision of the bond in reference to waivers, and that the obligation was still in force in so far as it related to the taking of the children out of the state of New York for a period of more than one week, and, of course, if this theory is correct, he is entitled to some relief in this action. We are of the opinion, however, that the plaintiff has misconstrued the obligation of the bond, which was clearly to guarantee the performance of the conditions of the contract during the time that the children were in the custody of Jane Francke under the terms of the original contracts. Contract A provided a fixed schedule of the time that the children were to be with each of the parties to the contract. This contract provided:

"The custody of said children shall be divided equally between the parties hereto from the first delivery of the children to the second party as provided for herein up to September 28, 1914, as follows: The entire care and custody of said children shall be with the second party the first half of the period from the first delivery of the children to May 28, 1912; with the first party the second half of the above period."

That is, the period of first delivery to the plaintiff was uncertain. It was to be within 15 days of the entry of the decree in the divorce proceedings, and the first half of the period down to May 28, 1912, the children were to be with the plaintiff, and the second half of the period they were to be with the mother; so that the children under the schedule were lawfully under the care and custody of the mother from some period prior to May 28th down to that date, and during that time the defendant in this action guaranteed that she would not take the children outside of the state of New York, except as provided in the contract. The schedule then provided that the said children should be in the "entire care and custody" of the plaintiff from May 28, 1912, to November 28, 1912, and the plaintiff had covenanted that while the children were in his care and custody he would not permit them to go outside of the state of New York, except as provided in the contract; but obviously the defendant had made no contract of guaranty as to what should be done with the children while they were in the "entire care and custody" of the plaintiff.

[2] While it was undoubtedly liable as a surety until the children were surrendered to the plaintiff on the 11th day of June, 1912, when the plaintiff accepted them and agreed not to insist upon his rights under the bond there was a waiver of the breach of the contract, and the

rule is well settled that where a right has once been waived it cannot afterwards be asserted. Mayor, etc., of New York v. M. R. Co., 143 N. Y. 1, 26, 37 N. E. 494, and authorities there cited. From the moment of the surrender to the plaintiff, and the waiver of the breach of the contract by Jane Francke, the plaintiff became the lawful custodian of these children for the period ending on the 28th day of November, 1911, and in his contract with his former wife he reserved the right to call for the return of the children during that period. In other words, they continued in his "entire care and custody" under the terms of the original contract, so far as the defendant here is concerned, for it had undertaken no responsibility for their care or custody during this period. The defendant guaranteed the conduct of Jane Francke under the provisions of the contracts which in effect became a part of the conditions of the bond, and not under some subsequent contract with the plaintiff in this action. The defendant in effect said that it would guarantee that Jane Francke would deliver the children to the plaintiff on the 28th day of May, 1912, and that she would accept them from him and keep them in her "entire care and custody" from the 28th day of November, 1912, to the 28th day of May, 1913, under the terms of the original contract; but it nowhere assumed any responsibility for the "entire care and custody" of these children during the period that they were legally in such care and custody of the plaintiff. He alone took that responsibility. If he chose to farm them out to Jane Francke, or to any other person during that period, the defendant did not undertake to stand as surety that such persons would not take the children out of the state.

The plaintiff had it in his power to make the terms on which he would permit Jane Francke to retain the children for all or a portion of the time which they belonged to him to care for and control. He might have demanded a new bond, or imposed any conditions which he deemed necessary for the preservation of his rights, and acting within his legitimate powers, and without consulting the defendant in any manner, he entered into a written agreement, imposing such restrictions as he thought proper; and if the person whom he thus permitted to have the custody of his children took them off to Europe the defendant is no more responsible than it would be if the plaintiff had himself taken them with him on his European trip. In guaranteeing Jane Francke's conduct, under certain contracts made a part of the surety contract, the defendant did not guarantee that this same Jane Francke would become a trustworthy agent of the plaintiff under a contract which it had never seen or heard of, and which was not in existence at the time the surety contract was made. Even under the rule of liberal construction contended for by the plaintiff, in cases where the surety performs the service for a consideration, the courts are without power to extend the contract obligation beyond the limits fixed by the parties themselves. The plaintiff, who had contracted to take the "entire care and custody" of the children for certain fixed periods, and who had given a bond to Jane Francke for the faithful performance of this obligation, and for their return to her at other fixed periods, would himself be in default under this contract if he had turned these children over to any other person, who had taken them to Europe, and he would

be responsible, even though this had been done wrongfully as against him, for he would have placed such person in a position to do the wrong.

Having turned them over to the very person with whom he had contracted not to permit them to be out of the state, without requiring security for their maintenance within the state, he must be deemed to have made her his agent, and he cannot now be heard to say that the defendant is liable for his own neglect in the discharge of his obligation to furnish the "entire care and custody" of these children. The arrangement of June 11, 1912, in so far as it related to the custody of the children from that date to the 28th day of November, 1912, was in no sense a waiver of the rights of either party under the contracts then existing. It was a collateral agreement in relation to a matter not covered by any of these contracts. It was a contract by which Jane Francke undertook to perform some of the obligations of the plaintiff under these agreements. She became his agent in the performance of the conditions of the contracts requiring him to furnish "entire care and custody" between the 28th day of May and the 28th day of November, 1912, and the defendant is as innocent of any relation to this transaction as though it had never seen any of the parties to the surety agreement.

[3] The effort to make the waiver provision fit into this case, and to give the plaintiff rights, is merely an evidence of that tendency to self-hypnotism into which litigants are apt to drift. The provision is designed, not to permit the parties to enlarge the obligations of the surety, but to maintain the contract of suretyship as a whole during the entire term designed to be covered by the contracts. It permits a waiver, such as that conceded in this case, where Jane Francke neglected to deliver the children on the 28th day of May, but did so on the 11th day of June, and it provides that in case of such a waiver it shall not "operate, directly or indirectly, thereafter to impair any of the rights of either of the parties under this undertaking, the intention hereof being that such undertaking shall, after such waiver, continue with the same force and effect as if such waiver had not been made." That is, the plaintiff might waive his right to have the children from the 28th day of May to the 11th day of June, or during the entire period up to November 28th, but upon Jane Francke coming into the "entire care and custody" of the children on the 28th day of November the contract of suretyship would attach, the same as though there had been no intermediate waiver. To give any other construction to this provision we must close our eyes to the words "thereafter" and "after such waiver," and read the clause as though they were not there, and even this would fall short of the requirements, for, as we have already pointed out, there were no rights of the plaintiff involved during the time that the children were, in contemplation of the contract, within the "care and custody" of himself. The language of the contract is that "no waiver by said principal or obligee of any of his or her rights under any of the provisions of" the contract "shall operate directly or indirectly, thereafter, to impair any of the rights," etc. "Thereafter" is synonymous with "afterward" (Sleigh v. Strider, 5 Call [9 Va.] 442), and "afterward" means subsequent in point of

time (1 Am. & Eng. Ency. of Law, 924; 28 Am. & Eng. Ency. of Law, 132). So that the reading is that no waiver shall operate, directly or indirectly, afterward to impair any of the rights of the parties, which simply means that the general purpose of the undertaking shall not be defeated because the parties in interest may at any time forbear to insist upon the rights fixed by the terms of the various contracts, for it is declared that the intention of this provision is "that such undertaking shall, after such waiver, continue with the same force and effect as if such waiver had not been made." "There are," says Lord Bacon in his celebrated Reading on the Statute of Uses (Bacon's Works, 187), "in every statute certain words which are as veins where the life and blood of the statute cometh, and where all doubts do arise," and when we have found a legitimate and intelligent use of all of the language in a contract we will not travel outside of the provisions of the instrument to impose a hardship upon one who has been without fault; and this leads inevitably to the affirmance of this judgment.

The words in this contract call for the performance of the original contracts by Jane Francke, in letter and spirit, with a proviso that, if the plaintiff shall waive any one of the requirements, this shall not operate to affect the validity of the undertaking as it relates to provisions of these contracts yet to be performed. It is not necessary to hold that the plaintiff has committed a breach of the contract. It is sufficient for the purposes of this litigation to hold that the defendant owed no obligation to the plaintiff in respect to the whereabouts of the children during the time that the contract provided that they should be in his "entire care and custody." This is not a right guaranteed to him by the defendant's contract.

The judgment appealed from should be affirmed, with costs. All concur.